## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____<br>) |
| v. | ) JURY TRIAL DEMANDED<br>) |
| AVON PRODUCTS, INC., CHAN W. GALBATO, W. DON CORNWELL, JAN ZIJDERVELD, JOSE ARMARIO, NANCY KILLEFER, SUSAN J. KROPF, HELEN MCCLUSKEY, ANDREW G. MCMASTER, JR., JAMES A. MITAROTONDA, MICHAEL F. SANFORD, LENARD TESSLER, NATURA COSMÉTICOS S.A., NECTARINE MERGER SUB I, INC., NECTARINE MERGER SUB II, INC., and NATURA & CO. HOLDING S.A., | ) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on May 22, 2019 (the "Proposed Transaction"), pursuant to which Avon Products, Inc. ("Avon" or the "Company") will be acquired by Natura Cosméticos S.A. ("Parent"), Nectarine Merger Sub I, Inc. ("Merger Sub I"), a Delaware corporation, Nectarine Merger Sub II, Inc. ("Merger Sub II"), a Delaware corporation, and Natura & Co Holding S.A. ("HoldCo," and together with Parent, Merger Sub I, and Merger Sub II, "Natura").

2. On May 22, 2019, Avon's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (as amended, the "Merger Agreement") with Natura.

3. On October 4, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for November 13, 2019.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Avon common stock.

9. Defendant Avon is a New York corporation and a party to the Merger Agreement. Avon's common stock is traded on the New York Stock Exchange under the ticker symbol "AVP."

10. Defendant Chan W. Galbato ("Galbato") is Non-Executive Chairman of the Company. Galbato is Chief Executive Officer of Cerberus Operations and Advisory Company, LLC.

11. Defendant W. Don Cornwell is a director of the Company.

12. Defendant Jan Zijerveld is Chief Executive Officer and a director of the Company.

13. Defendant Jose Armario is a director of the Company.

14. Defendant Nancy Killefer is a director of the Company.

15. Defendant Susan J. Kropf is a director of the Company.

16. Defendant Helen McCluskey is a director of the Company.

17. Defendant Andrew G. McMaster, Jr. is a director of the Company.

18. Defendant James A. Mitarotonda is a director of the Company.

19. Defendant Michael F. Sanford ("Sanford") is a director of the Company. Sanford is a Senior Managing Director, Co-Head of Private Equity, and a member of the Global Private Equity Investment Committee at Cerberus Capital Management, L.P. ("Cerberus").

20. Defendant Lenard Tessler ("Tessler") is a director of the Company. Tessler is Vice Chairman and Senior Managing Director of Cerberus.

21. The defendants identified in paragraphs 10 through 20 are collectively referred to herein as the "Individual Defendants."

22. Defendant Merger Sub I is a Delaware corporation and a party to the Merger Agreement.

23. Defendant Merger Sub II is a Delaware corporation and a party to the Merger Agreement.

24. Defendant Parent is a corporation incorporated under the laws of the Federative Republic of Brazil and a party to the Merger Agreement.

25. Defendant HoldCo is a corporation incorporated under the laws of the Federative Republic of Brazil and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Avon (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

27. This action is properly maintainable as a class action.

28. The Class is so numerous that joinder of all members is impracticable. As of May 20, 2019, there were approximately 662,424,230 shares of Avon common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

29. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

30. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately

protect the interests of the Class.

31. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

32. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

33. Avon is a global manufacturer and marketer of beauty and related products.

34. The Company's product categories are Beauty and Fashion & Home. Beauty consists of skincare, fragrance, and color (cosmetics). Fashion & Home consists of fashion jewelry, watches, apparel, footwear, accessories, gift and decorative products, housewares, entertainment and leisure products, children's products, and nutritional products.

35. Avon's business is conducted primarily in one channel: direct selling.

36. The Company's reportable segments are based on geographic operations in four regions: (i) Europe, Middle East, and Africa; (ii) South Latin America; (iii) North Latin America; and (iv) Asia Pacific.

37. On May 22, 2019, Avon's Board caused the Company to enter into the Merger Agreement with Natura.

38. According to the press release announcing the Proposed Transaction:

Natura &Co (B3: NATU3) announces that it is acquiring Avon Products, Inc. (NYSE: AVP) in an all-share transaction, creating the fourth-largest pure-play beauty group in the world and a major force for good in the industry. . . .

As part of this transaction, a new Brazilian holding company, Natura Holding S.A., has been created. Based upon the fixed exchange ratio of 0.300 Natura Holding shares for each share of Avon common stock, Natura &Co's shareholders will own approximately 76% of the combined company, while Avon common shareholders will own approximately 24%. Based on Natura's undisturbed closing price on March 21, 2019, one day prior to Natura issuing the Material Fact confirming negotiations between Avon and Natura, the transaction represents a 28% premium to Avon shareholders and implies a 2018 EBITDA multiple of 9.5x or 5.6x assuming the full impact of Natura's expected synergies. Based on closing prices on May 21, 2019, the transaction values Avon at an enterprise value of US$3.7 billion and the combined group would have an enterprise value of approximately US$11 billion. Upon closing, Natura Holding S.A.s' stock will be listed on B3 with a 55% public float and it will also have ADRs listed on the NYSE. Avon shareholders will have the option to receive ADRs traded on the NYSE or shares listed on B3. . . .

Upon closing, the Board of Directors of the combined company will consist of 13 members, 3 of which will be designated by Avon. The transaction remains subject to customary closing conditions including approval by both Natura &Co's and Avon's shareholders as well as anti-trust authorities in Brazil and certain other jurisdictions. Closing is expected in early 2020.

UBS Investment Bank and Morgan Stanley acted as financial advisors to Natura &Co. Goldman Sachs acted as financial advisor to Avon and PJT Partners acted as financial advisor to members of the Avon Board of Directors.

39. Pursuant to the terms of the Merger Agreement:

(i) Natura &Co Holding will, after the completion of certain restructuring steps, hold all issued and outstanding shares of Natura Cosméticos, (ii) Merger Sub II will merge with and into Avon, with Avon surviving the merger and (iii) Merger Sub I will merge with and into Natura &Co Holding, with Natura &Co Holding surviving the merger and as a result of which each of Avon and Natura Cosméticos will become a wholly owned direct subsidiary of Natura &Co Holding (collectively, the "Transaction").

If the Transaction is completed, each share of common stock, par value U.S.$0.25 per share, of Avon (the "Avon Common Shares") issued and outstanding immediately prior to the consummation of the Transaction (other than as provided in the Merger Agreement) will be converted into the ultimate right to receive, at the election of the holder thereof, (i) 0.300 . . . validly issued and allotted, fully paid-up American Depositary Shares of Natura &Co Holding ("Natura &Co Holding

ADSs") against the deposit of two shares of common stock of Natura &Co Holding ("Natura &Co Holding Shares"), subject to adjustment in accordance with the terms of the Merger Agreement, and any cash in lieu of fractional Natura &Co Holding ADSs or (ii) 0.600 . . . validly issued and allotted, fully paid-up Natura &Co Holding Shares, subject to adjustment in accordance with the terms of the Merger Agreement, and any cash in lieu of fractional Natura &Co Holding Shares. Based on the closing trading price of Natura Cosméticos common shares as of October 3, 2019 of U.S.$8.22 (calculated at the exchange rate of Brazilian reais per U.S. dollar of R$4.0884 as reported by Bloomberg at 4:00 pm New York time on October 3, 2019) and the exchange ratio of 0.600, the implied value of the consideration that Avon shareholders will be entitled to receive if the Transaction is completed (including in the form of cash in lieu of fractional Natura &Co Holding Shares or fractional Natura &Co Holding ADSs) is U.S.$4.93 per Avon Common Share.

40. On May 22, 2019, concurrently with the execution of the Merger Agreement, Cleveland Apple Investor L.P. ("Cleveland"), an affiliate of Cerberus, entered into a voting and support agreement with Natura, pursuant to which it agreed to vote its shares in favor of the Proposed Transaction. Cleveland owns approximately 16.42% of the total outstanding Avon shares. Individual Defendants Galbato, Sanford, and Tessler are currently employed by Cerberus or its affiliates.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

41. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

42. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

43. First, the Proxy Statement omits material information regarding the Company's and Natura's financial projections.

44. With respect to the Company's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate (a) adjusted operating profit, (b) adjusted EBITDA, (c) adjusted EBITDA less CAPEX, and (d) unlevered free cash flow; and (ii) a reconciliation of all

non-GAAP to GAAP metrics.

45. With respect to Natura's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate (a) adjusted EBITDA, (b) adjusted EBITDA less CAPEX, and (c) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

46. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

47. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Goldman Sachs ("Goldman") and PJT Partners ("PJT").

48. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Avon Stand-Alone*, the Proxy Statement fails to disclose: (i) Goldman's basis for applying a range of enterprise value to next twelve months ("NTM") EBITDA ("NTM EV/EBITDA") multiples of 7.0x to 8.0x; (ii) the liquidation value of the Avon preferred shares, pension deficit, non-controlling interest, and net debt of Avon; (iii) the number of fully diluted Avon common shares estimated to be outstanding; and (iv) the individual inputs and assumptions underlying the discount rate of 10.0%.

49. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis – Natura &Co Holding Pro Forma*, the Proxy Statement fails to disclose: (i) Goldman's basis for applying a range of NTM EV/EBITDA multiples of 9.0x to 10.0x; (ii) the pension deficit of Avon, non-controlling interest of Avon, pro forma adjusted net debt of Avon and Natura, and the net cash proceeds from the capital reduction of Natura (Brasil) International B.V. Netherlands;

8

(iii) the number of fully diluted HoldCo shares estimated to be outstanding; (iv) the dividends per HoldCo share expected to be paid to holders of HoldCo shares; and (v) the individual inputs and assumptions underlying the discount rate of 8.8%.

50. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Avon Stand-Alone*, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0% and the perpetuity growth rate ranging from 1.0% to 2.0%; (ii) all line items used to calculate unlevered free cash flow; (iii) the range of illustrative terminal values for Avon; (iv) the liquidation value of the Avon preferred shares, pension deficit, non-controlling interest, and net debt of Avon; and (v) the number of fully diluted outstanding Avon common shares.

51. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Natura &Co Holding Pro Forma*, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates ranging from 8.5% to 9.5% and the perpetuity growth rate ranging from 1.0% to 2.0%; (ii) all line items used to calculate unlevered free cash flow; (iii) the range of terminal values for HoldCo; (iv) the pension deficit of Avon, non-controlling interest of Avon, and pro forma adjusted net debt of Avon and Natura; and (v) the number of fully diluted outstanding shares of HoldCo.

52. With respect to PJT's *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose: (i) the companies observed by PJT in the analysis; (ii) PJT's basis for selecting a TEV to EBITDA multiple range of 6.25x to 7.25x for 2019E EBITDA and 5.75x to 6.75x for 2020E EBITDA for Avon; (iii) the fully diluted number of shares of Avon common stock; (iv) PJT's basis for selecting a TEV to EBITDA multiple range of 9.0x to 11.0x for 2019E EBITDA and 7.5x to 9.5x for 2020E EBITDA for Natura; and (v) the fully diluted number of

shares of Natura stock.

53.	With respect to PJT's *Discounted Cash Flow Analysis* of Avon, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the ranges of terminal values of Avon; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5% and the perpetuity growth rate range of 0.5% to 1.5%; (iv) estimated net debt; and (v) the fully diluted number of shares of Avon common stock.

54.	With respect to PJT's *Discounted Cash Flow Analysis* of Natura, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the ranges of terminal values of Natura; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5% and the perpetuity growth rate range of 3.0% to 4.0%; (iv) estimated net debt; and (v) the fully diluted number of shares of Natura stock.

55.	With respect to PJT's *Discounted Equity Value Analysis* of Avon, the Proxy Statement fails to disclose: (i) PJT's basis for using NTM TEV/EBITDA multiples of 6.25x and 7.25x; (ii) Avon's estimated net debt; (iii) the fully diluted number of shares of Avon common stock; and (iv) the individual inputs and assumptions underlying the discount rate of 15.0%.

56.	With respect to PJT's *Discounted Equity Value Analysis* of Natura, the Proxy Statement fails to disclose: (i) PJT's basis for using NTM TEV/EBITDA multiples of 9.0x and 11.0x; (ii) Natura's estimated net debt; (iii) the fully diluted number of shares of Natura stock; and (iv) the individual inputs and assumptions underlying the discount rate of 12.0%.

57.	With respect to PJT's "Has/Gets" analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate of 10.0% and the 1.0% and 3.5% perpetuity growth rates; and (ii) the fully diluted number of shares of Avon common stock.

58. With respect to PJT's analysis of research analyst price targets, the Proxy Statement fails to disclose: (i) the price targets observed by PJT in the analysis; (ii) the sources thereof; and (iii) the individual inputs and assumptions underlying the discount rates of 15.0% and 12.0%.

59. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

60. Third, the Proxy Statement omits material information regarding potential conflicts of interest of PJT.

61. The Proxy Statement fails to disclose the timing and nature of the past services PJT provided to Cerberus.

62. The Proxy Statement fails to disclose the reasons the "independent non-Cerberus directors" failed to engage a financial advisor that did not previously provide services to Cerberus and its affiliates.

63. The Proxy Statement fails to disclose whether PJT has provided past services to Avon or its affiliates, as well as the timing and nature of such services and the amount of compensation received by PJT for providing such services.

64. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

65. Fourth, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

66. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

67. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background to the Transaction; (ii) Recommendation of the Avon Board of Directors; Avon's Reasons for the Transaction; (iii) Opinion of Avon's Financial Advisor; (iv) Opinion of the Independent Non-Cerberus Directors' Financial Advisor; and (v) Certain Forecasts.

68. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Avon**

69. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Avon is liable as the issuer of these statements.

71. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

72. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

73.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

74.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

75.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

76.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Natura

77.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

78.     The Individual Defendants and Natura acted as controlling persons of Avon within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Avon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

79.     Each of the Individual Defendants and Natura was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

80. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

81. By virtue of the foregoing, the Individual Defendants and Natura violated Section 20(a) of the 1934 Act.

82. As set forth above, the Individual Defendants and Natura had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 15, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com